UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HUBERT C. BLACKBURN,

       Plaintiff,

vs.                                Case No.  3:06-cv-29-J-MCR

MICHAEL J. ASTRUE[1], Commissioner of
the Social Security Administration,

       Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[2]

       This cause is before the Court on Plaintiff's appeal of an administrative decision

denying his application for Social Security benefits.  The Court has reviewed the record,

the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's

decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this

opinion.

**I.    PROCEDURAL HISTORY**

       Plaintiff filed an application for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") on July 30, 2001, alleging an inability to work

since February 28, 2000 (Tr. 73-75).  The Social Security Administration ("SSA") denied

---

     [1]     Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.  In accordance with Fed. R. Civ. P. 25(d)(1), Michael J. Astrue should be substituted as Defendant in this litigation.

     [2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 8).

this application initially and on reconsideration. (Tr. 30-31). Plaintiff subsequently filed a timely request for a hearing on the matter. (Tr. 42). Plaintiff's request was granted and a hearing was conducted by an Administrative Law Judge (the "ALJ") on December 2, 2003. (Tr. 404-431). At the conclusion of the hearing the ALJ determined he needed to update the record because he had questions regarding Plaintiff's IQ and mental status; thus, the ALJ ordered a consultative examination on Plaintiff for the purpose of testing Plaintiff's IQ and mental status. (Tr. 427-430). On August 31, 2004, after Plaintiff's follow up examination, the ALJ conducted a second hearing. (Tr. 432-449). On October 15, 2004, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 17-29). Plaintiff filed a Request for Review by the Appeals Council which was denied on November 18, 2005. (Tr. 6-12). Plaintiff timely filed a Complaint in the U.S. District Court on January 31, 2006. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since February 28, 2000, due to back and leg pain (Tr. 18), depression (Tr. 18), and lung disease (Tr. 42).

### B.   Summary of Evidence Before the ALJ

Plaintiff was forty-five years of age on the date the ALJ's decision was issued. (Tr. 27). Plaintiff's past relevant work experience includes working as a farm worker, semi-driver, and construction worker. (Tr. 26). Plaintiff was insured for disability benefits through December 31, 2004. (Tr. 19, 25). Plaintiff's medical history is set forth

in the record.  By way of summary,[3] Plaintiff was injured on February 29, 2000 after he experienced a work related accident in which he was pinned between a dumpster truck and a front end loader. (Tr. 199).  After the accident, Plaintiff was seen at the Care-1 Occupational Health Center ("Care-1") where he complained of constant anterior wall chest pain worsening with movement or breathing.  (Tr. 197).  Plaintiff was taken by ambulance to Monroe Regional Medical Center and was in stable condition.  (Tr. 198).  Plaintiff underwent CT scans of his chest, abdomen, and pelvis and an X-Ray of his chest, all of which were normal.  (Tr. 178-79).

Plaintiff sought treatment from Dr. Caban at Care-1 from the date of his accident through May 2000.  (Tr. 184-200).  During this time, Plaintiff continuously complained of pain in his chest and back, and numbness in his legs and rear end. (Tr. 196, 193, 192, and 187).  On March 6, 2000, Dr. Caban placed Plaintiff on strict sedentary duty; he was prohibited from lifting over 10 pounds, was prohibited from prolonged walking, and was to avoid rough-riding vehicles, pushing pulling, bending, and twisting.  (Tr. 196, 193, 192, and 187).  An X-Ray of his sternum was taken on March 13, 2000, which was normal.  (Tr. 194).  Dr. Caban prescribed Plaintiff Celebrex, Norflex, and Ultran for his pain.  (Tr. 193).

Plaintiff began complaining of wheezing upon deep breathing on March 27, 2000. (Tr. 192).  An X-Ray of Plaintiff's chest showed possible bronchopneumonia, but no pleural effusion.  (Tr. 191-92).  Plaintiff was treated with a Z-pack, but continued to complain of coughing.  (Tr. 188).  On April 4, 2000, Dr. Caban questioned whether

---

[3]       This summary is limited to the evidence relevant to the issues on appeal.

Plaintiff had developed  post traumatic pneumonitis, and thus referred Plaintiff to a pulmonologist.  (Tr. 188).

Plaintiff was seen by Poonan Warman, M.D., a pulmonologist, at the Ocala Lung & Critical Care Associates on April 6, 2000.  (Tr. 182-83).  Dr. Warman examined Plaintiff and did not find evidence of anything abnormal.  Id.  Plaintiff returned to see Dr. Caban on April 11, 2000 and continued to complain of pain in his lower back and down his right leg.  (Tr. 187).  Dr. Caban noted Plaintiff's symptoms were highly suggestive of posttraumatic stress syndrome because Plaintiff repeatedly relived his accident, had trouble sleeping, and experienced night sweats.  Id.  Dr. Caban referred Plaintiff to a psychologist or psychiatrist.  Id.

On April 18, 2000, Dr. Caban noted Plaintiff was no longer complaining of chest pain, but continued to complain of back and leg pain and numbness.  (Tr. 186).  Dr. Caban further noted Plaintiff was being seen by both a pulmonologist and Dr. Hunter for his back problems.  Id.  Because Plaintiff had run out of his pain medication, Dr. Caban prescribed Sinequan and Talacen for his pain.  Id.  On May 5, 2000, Plaintiff noted the Sinequan was helping his pain and he claimed to have more energy.  (Tr. 185).  Although both Dr. Hunter and Dr. Caban wanted to conduct imaging studies of Plaintiff's lumbar spine, Plaintiff was unable to fit in the MRI or CT machine due to his obesity.  (Tr. 185).  Upon examination Plaintiff demonstrated he could do a 80-85 degree forward bend, and although he refused to attempt squatting, he was able to walk on his toes and heels.  Id.  Plaintiff was discharged from Care-1 on May 5, 2000 because he was being seen by Dr. Hunter; however, Dr. Caban instructed Plaintiff to avoid lifting more than 10

-4-

pounds, to avoid frequent bending and twisting at the waist, to avoid repetitive pushing

or pulling, and further instructed Plaintiff he should not engage in prolonged standing

because it tends to worsen Plaintiff's symptoms.  (Tr. 184).

In Plaintiff's initial visit to Dr. Hunter on April 17, 2000, Plaintiff complained of

numbness in his right buttock, increasing back pain, and a decreasing tolerance for

sitting, standing, walking, driving, and lifting.  (Tr. 253).  Dr. Hunter noted Plaintiff had a

preexisting injury to his lower back in 1998 with permanency in 1990.  (Tr. 255).  Review

of Plaintiff's records showed Plaintiff had experienced additional objective injury and

Plaintiff may have aggravated or exacerbated the permanent injury to his lower back.

Id.  Dr. Hunter continued to treat Plaintiff through August of 2001.  Dr. Hunter diagnosed

Plaintiff with lumbar strain with right lower extremity radicular symptoms and stress

contusion.  (Tr. 252).   He placed Plaintiff on sedentary restrictions and recommended

physical therapy and therapeutic exercises.  Id.

On May 15, 2000, a CT of Plaintiff's lumbar spine was taken, which showed facet

degeneration at multiple levels without significant overgrowth of the facets and no

significant central or foraminal encroachment.  (Tr. 250).  On May 16, 2000, Dr. Hunter

filled out an activity level estimation in which he noted Plaintiff had not reached

maximum medical improvement ("MMI"), but that Plaintiff could return to activities with

the following restrictions: he must be able to make position changes as needed; he can

occasionally carry up to 10 pounds but never more; and he can never stoop or bend,

but can occasionally squat, crawl, climb, reach, push, or pull.   (Tr. 251).  Dr. Hunter

noted these restrictions were temporary.  Id.

On June 8, 2000, despite beginning physical therapy,  Plaintiff continued to have lower back and leg pain, as well as numbness in his right buttock.  (Tr. 247). On July 17, 2000, Plaintiff had an Electrodiagnostic evaluation ("EMG") in which all of Plaintiff's muscles were studied in both of his lower extremities, and a nerve conduction study was performed.  Dr. Hunter noted Plaintiff's EMG showed normal results.  (Tr. 243).  He further noted the activity involved in physical therapy was making Plaintiff's condition worse, id.; however, the medications seemed to help him .  On August 21, 2000, Dr. Hunter specified there was no change in Plaintiff's restrictions and he asked Plaintiff to consider epidural steroids.  (Tr. 242).

On September 25, 2000, Dr. Hunter noted Plaintiff's chest symptoms had resolved and there was no permanency related to that part of the accident; however, Plaintiff continued to have episodic right lower extremity symptoms and burning.  (Tr. 239).  Dr. Hunter also noted Plaintiff had moved in with his mother because of financial reasons and because he was unable to do housework.  Id.  On March 5, 2001, Dr. Hunter found Plaintiff 's condition was stable, but he continued to have pain in his back, neck, and right lower extremities.  (Tr. 233).  He noted Plaintiff had gained weight.  Id. Plaintiff was to continue on his current medications and Dr. Hunter kept Plaintiff restricted to sedentary activities only.  (Tr. 234).  Plaintiff saw Dr. Hunter in August 2001 and again in October 2001, at which times Plaintiff continued to complain of neck, back, and leg pain and difficulty sleeping.  (Tr. 227, 230).

On December 12, 2001 Plaintiff saw a cardiologist and lung specialist at Shands Health Care, who told Plaintiff to decrease his weight and to take pain medications.  (Tr. 256).

In May 2001, Plaintiff began seeing Ramon E. Pino, M.D., a psychiatrist from the Florida Psychiatric Group.  (Tr. 262-268).  Plaintiff reported he began suffering from psychiatric problems, including anger, irritability, insomnia, anxiety, and depression, after he was injured at work.  (Tr. 263).  Dr. Pino noted Plaintiff's behavior showed evidence of aggression and violence.  Id.  He further noted Plaintiff seemed to be in severe psychological distress (Tr. 264), but that Plaintiff's thought processes were logical and coherent (Tr. 265).  Dr. Pino opined that Plaintiff's attention and concentration skills were abnormal, as was his immediate, recent, and remote memory. Id. Dr. Pino estimated Plaintiff's intellectual ability as below average.  Id.

Dr. Pino diagnosed Plaintiff with alcohol dependence episodic, mood disorder, and major depression – recurrent, moderate.  (Tr. 266).  He also noted Plaintiff had chronic pain syndrome, weight gain, and sexual dysfunction, as well as severe psychosocial stresses and a GAF score of 31.  Id.  Plaintiff told Dr. Pino he was not able to work, but Dr. Pino noted Plaintiff did not have psychiatric restrictions preventing him from working.  (Tr. 267).   Dr. Pino recommended Plaintiff receive psychiatric management which consisted of individual therapy and medication.  (Tr. 268).  He recommended Plaintiff take Buspar and Zoloft and that Plaintiff continue with pain management through Dr. Hunter, because Plaintiff's chronic pain appeared to be the major contributing cause of his psychiatric diagnosis.  (Tr. 267-68).

Plaintiff continued to see Dr. Pino consistently through January 2002.  (Tr. 257-261).  Dr. Pino filled Plaintiff's prescriptions and estimated his GAF at 41.  Id.

There are two notes in the record from James, M. Janousek, M.D., a family practice physician.  (Tr. 295-96).  On December 12, 2001, Dr. Janousek stated Plaintiff is totally and permanently disabled from lung disease and back pain.  (Tr. 296).  Also, on March 4, 2002, Dr. Janousek stated Plaintiff is totally and permanently disabled with emphysema, obesity and back pain.  (Tr. 295).  The record is devoid of any other medical records from Dr. Janousek.

Plaintiff returned to see Dr. Hunter in May 2002 because of his lower extremity radicular pain, intermittent thoracolumbar strain, and neck pain.  (Tr. 307).  Plaintiff had radiological studies performed, and Dr. Hunter noted no evidence of lumbosacral motor radiculopathy, but that the CT scan of Plaintiff's spine showed degenerative changes in multiple levels.  Id.  On July 12, 2002, Dr. Hunter ordered Plaintiff to undergo an MRI of his lumbar spine.  (Tr. 306).  The MRI was extremely limited because of Plaintiff's mass, however, it showed degenerative changes at several levels with probable annular bulges at L4-L5 and L5-S1.  (Tr. 305).  On October 15, 2002, Dr. Hunter noted Plaintiff's symptoms overall were stable, but that Plaintiff continued to have back pain.  (Tr. 298) Dr. Hunter diagnosed Plaintiff as having: chronic low back pain; degenerative disc disease in the lumbar spin; radicular symptoms -- right, intermittent; obesity; neck pain – probably postural; and thoracolumbar strain.  Id.  Dr. Hunter also kept Plaintiff at sedentary activity status.  Id.

Plaintiff returned to Dr. Pino in July, August, and October of 2002.  (Tr. 303-04).

Again, Dr. Pino diagnosed Plaintiff with mood disorder, major depression – recurrent,

moderate, and chronic pain syndrome.  Id.  His GAF remained at 41.  Id.

On March 31, 2003, Plaintiff went to the County Health Department complaining

of a bad cough and wheezing, and rectal bleeding.  (Tr. 322-326).  On exam, the doctor

noted he had poor air movement and COPD.  (Tr. 323).

Pursuant to the ALJ's orders, Plaintiff was examined by Raymond P.

Schoenrock, Ph.D., on April 20, 2004.  (Tr. 309-318).  Dr. Schoenrock noted Plaintiff

was over 400 pounds and although he walked without an assistive device, he was

clearly in a fair degree of discomfort due to pain in his back and legs. (Tr. 310).  He

further noted Plaintiff's mood was depressed and that Plaintiff admitted to crying spells,

anger, and thoughts of suicide.  Id.  Dr. Schoenrock performed IQ tests on Plaintiff in

which Plaintiff scored 76 on his Verbal IQ, 75 on his Performance IQ, and 74 on his Full

Scale IQ – which placed Plaintiff's current level of intellectual functioning in the

borderline range.  Id.  Dr. Schoenrock diagnosed Plaintiff with: major depressive

disorder – single episode, moderate; polysubstance dependence – in sustained full

remission; r/o antisocial personality disorder; and borderline intellectual functioning.

(Tr. 311).

Dr. Schoenrock also noted Plaintiff had slight restrictions in his ability to

understand and remember detailed instructions, and in his ability to make judgments on

simple work-related decisions.  (Tr. 317).  Dr. Schoenrock found Plaintiff had marked

restrictions in his ability to interact with the public, supervisors, co-workers, and in his

ability to respond appropriately to work pressures in a usual work setting.  (Tr. 318).

Finally, Dr. Schoenrock noted Plaintiff had moderate restrictions in his ability to

appropriately respond to changes in a routine setting.  Id.  He opined Plaintiff has

significant interpersonal issues with difficulty dealing with stressful situations and may

be prone to reacting with anger and hostility.  Id.

Plaintiff returned to see Dr. Pino on August 17, 2004.  Dr. Pino reported his

opinion of Plaintiff had not changed.  (Tr. 321).  He continued with a GAF score of 41.

Id.

A state agency physician, J. Patrick Neal, M.D., completed a Physical Residual

Functional Capacity Assessment of Plaintiff on September 14, 2001.  (Tr. 201-208).  Dr.

Neil diagnosed Plaintiff with back and leg pain (Tr. 201) and found he could occasionally

lift 50 pounds, frequently lift 25 pounds, stand or walk about 6 hours in an 8 hour work

day, sit about 6 hours in an 8 hour work day, and could push and/or pull in an unlimited

amount.  (Tr. 202).  Dr. Neil further found Plaintiff could frequently balance, and could

occasionally perform all other postures.  (Tr. 203).

On February 20, 2002, a second state agency physician, Tom Peele, M.D,

completed a Physical Residual Functional Capacity Assessment on Plaintiff.  (Tr. 287-

294).  Dr. Peele's findings were similar to Dr. Neil's findings except that Dr. Peele found

Plaintiff could only occasionally lift 10 pounds and could frequently lift less than 10

pounds.  (Tr. 286).  He also found Plaintiff could occasionally perform all postures, but

Plaintiff should avoid hazards such as machinery and heights.  (Tr. 291).

On September 24, 2001 and again on February 15, 2002, state agency psychologists filled out Psychiatric Review Technique forms of Plaintiff.  (Tr. 209-222 and 269-282).  Their findings were similar in that both found Plaintiff to suffer from an affective disorder.  (Tr. 209, 269).  The first psychologist found Plaintiff to have depressive symptoms characterized by sleep disturbance, decreased energy, difficulty concentrating or thinking, and thoughts of suicide.  (Tr. 212).  The second psychologist found Plaintiff's affective disorder did not satisfy the 12.04 diagnostic criteria.   (Tr.272).  Additionally, the second psychologist found Plaintiff suffers from subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, with a valid verbal performance or full scale IQ of 60 through 70.  (Tr. 273).  Both psychologists found the majority of Plaintiff's functional limitations were either not limited or were only mildly limited; although both also found Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 219, 279).  Additionally, both psychologists found Plaintiff did not meet the C criteria for affective disorders under Listing 12.04.  (Tr. 220, 280).

Two psychologists also filled out Mental Residual Functional Capacity Assessments of Plaintiff on September 24, 2001 and February 15, 2002 (Tr. 223-225, 269-282).  The first psychologist found Plaintiff moderately limited in his ability to understand, remember, and carry out detailed instructions, in his ability to maintain attention and concentration for extended periods, and in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms.  (Tr. 223-224).   The second psychologist agreed Plaintiff was moderately limited in

maintaining attention and concentration for extended periods, and in his ability to complete a normal workday or workweek.  (Tr. 283-84).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b), 416.920(a)(2)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e), 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the non-disability requirements of the Social Security Act and was insured for benefits through December 31, 2004. (Tr. 18, 29). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 28, 2000. (Tr. 18, 28). The ALJ determined at step two that Plaintiff's "morbid obesity, disorders of the spine, affective disorder, borderline IQ, and r/o anti-social personality disorder" were severe impairments based on the requirements in 20 C.F.R. § § 404.1520(c) and 416.920(c). (Tr. 24, 28). At step three, however, the ALJ determined Plaintiff's impairments did not meet or medically equal, either singularly or in combination, any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Id.

Next, the ALJ determined Plaintiff retained the residual functional capacity to perform sedentary, unskilled work. (T. 26, 28). Specifically, the ALJ found Plaintiff:

> can lift 10 pounds occasionally and less than 10 pounds frequently. He can stand and/or walk 2 hours and sit 6 hours in an 8-hour workday. He can occasionally bend, crouch, kneel, stoop, squat, or crawl. He must avoid ladders or unprotected heights, and operation of heavy moving machinery. He must avoid contact with the public and have only limited contact with supervisors and co-workers. He must avoid unusual stress. He needs simple tasks.

Id. In making the determination of residual functional capacity, the ALJ found Plaintiff's testimony regarding his own limitations "not entirely credible and inconsistent with the evidence of record when considered in its entirety." (Tr. 25). At step four, the ALJ found Plaintiff was unable to perform past relevant work. (Tr. 27, 28). Finally, at step five, based on the testimony of a vocational expert ("VE"), the ALJ determined Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (Tr. 28, 29). The VE testified Plaintiff could work as

an addresser, which is sedentary unskilled work with 46,000 jobs available nationally and 2,600 jobs available regionally. (Tr. 27). Accordingly, the ALJ held Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 28, 30).

      D.    **Evidence Presented to the Appeals Council**

After the ALJ issued the decision, Plaintiff filed a Request for Review of Hearing Decision/Order on December 13, 2004. (Tr. 13). Subsequently, Plaintiff submitted new evidence to the Appeals Council. (Tr. 10). This new evidence consisted of records from North Florida Medical Centers, Inc. dated May 2005 - August 2005, and Shands Health Care dated August 2004 - July 2005. (Tr. 327-380). A record dated August 4, 2004 from Shands Health Care, indicates Plaintiff had a 4-day history of shortness of breath, wheezing, and a nonproductive cough. (Tr. 327). Plaintiff was seen in the Shands emergency room and was found to have no active pulmonary disease. Andrew C. Bass, M.D. diagnosed Plaintiff with, among other things, exacerbation of COPD, venous insufficiency lower extremities, morbid obesity, chronic low back pain, and cigarette abuse with no insight. (Tr. 329). Dr. Bass continued Plaintiff on a Heparin IV and started him on Coumadin for suspected pulmonary embolism, which could not be verified because of Plaintiff's massive obesity. Id.

The remaining Shands Health Care records were dated after Plaintiff's last insured date but indicate Plaintiff was diagnosed with new onset atrial fibrillation (Tr. 334), congestive heart failure, atherosclerotic cardiovascular disease, as well as exacerbation of Plaintiff's COPD (Tr. 342, 258-59, and 360-61).

Additionally, Plaintiff submitted records from North Florida Medial Center which are also dated after Plaintiff's last insured date. (Tr. 365-379). These records show additional evidence of Plaintiff's chronic heart failure, COPD, and atrial fibrillation. Id. There is a record dated August 5, 2005 from Bogdan Maliszewski, M.D. of the North Florida Medical Centers opining that Plaintiff is unable to work due to his emphysema, morbid obesity, and shortness of breath. (Tr. 380).

## III.    THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.   ANALYSIS

Plaintiff argues nine issues on appeal.  First, Plaintiff argues the ALJ erred by rejecting the disability opinions of Plaintiff's examining physician and a treating physician, in addition to ignoring limitations identified by two of Plaintiff's other treating physicians.  (Doc. 11, pp. 5-9).   Second, Plaintiff asserts the ALJ erred by rejecting Plaintiff's credibility without examining all of the evidence or applying the credibility factors outlined in Social Security Ruling ("SSR") 96-7P.  Id. at 9-13.  Third, Plaintiff claims the ALJ committed error because he failed to consider the impact of Plaintiff's obesity on Plaintiff's ability to work.  Id. at 13-14.  Fourth, Plaintiff claims the ALJ erred by failing to examine whether Plaintiff's impairments are medically equivalent to section 12.04 and 12.05C of the Listings.  Id. at 14-16.  Fifth, Plaintiff argues that the ALJ failed to utilize a medical expert to determine whether Plaintiff's impairments are medically equivalent to the 12.04 and 12.05C Listings.  Id. at 16-17.

Sixth, Plaintiff argues the ALJ erred by failing to include Plaintiff's low stress tolerance when determining Plaintiff's RFC.  Id. at 17-18.  Seventh, Plaintiff argues the ALJ erred by finding Plaintiff not disabled without properly considering whether there was an erosion of the occupational base to the number of jobs which Plaintiff could perform.  Id. at 19-20.  Eighth, Plaintiff claims the ALJ failed to identify Plaintiff's

functional limitations or restrictions and assess his work-related abilities on a function by

function basis when determining Plaintiff's RFC.  Id. at 20-22.  Finally, Plaintiff requests

a sentence six remand based on new evidence pertaining to Plaintiff's impairments.

Id. at 22-23.

> ### A.    Whether the ALJ erred by rejecting the disability opinions of Plaintiff's examining physician and a treating physician, in addition to ignoring limitations identified by two of Plaintiff's treating physicians.

Plaintiff first argues the ALJ erred in either rejecting or not considering the

opinions of several of Plaintiff's treating and examining physicians.  The Court will begin

its analysis with the ALJ's rejection of Dr. Schoenrock's opinion, as this issue is

dispositive of the entire case.

> ### 1.    Dr. Schoenrock

At the conclusion of Plaintiff's first hearing before the ALJ on December 2, 2003,

the ALJ stated he intended to order a consultative mental examination of Plaintiff before

making a decision as to whether Plaintiff was disabled.  (Tr. 430).  On March 13, 2004,

in response to a request from the Division of Disability Determinations, Dr. Schoenrock

saw Plaintiff for a general intellectual evaluation, a general personality evaluation, and a

review of medical data.  (Tr. 309).  Dr. Schoenrock diagnosed Plaintiff with: major

depressive disorder, single episode, moderate; polysubstance dependence, in full

remission; r/o (rule out) antisocial personality disorder; and borderline intellectual

functioning.  (Tr. 311).   After consideration of Dr. Schoenrock's opinion, the ALJ gave it

little weight for the following four reasons: (1) there is no indication in the record that

social personality disorder impacted any past employment tenure; (2) the reference to

r/o antisocial personality disorder is not supported by treatment records or activities of daily living; (3) the limits suggested by the testing and forms completed by Dr. Schoenrock are not reflective of any psychiatric disorder reflected in the record; and (4) Plaintiff's past history of a semi-driver also indicates ability.  (Tr. 25-26).

Plaintiff argues the ALJ erred when he rejected Dr. Schoenrock's disability opinion and findings.  (Doc. 11, pp. 7-8). Plaintiff further argues the ALJ's reasoning is not supported by the evidence for several reasons.  First, Plaintiff asserts the fact that Dr. Schoenrock noted the antisocial personality disorder should be ruled out actually means further testing of such disorder is required.  Id. at 7.  Second, the ALJ's own summary of Dr. Schoenrock's findings supports the diagnosis of r/o antisocial personality disorder.  Id.  Third, the ALJ substituted his own judgment for that of a medical professional when he stated the evidence does not support the suspected personality disorder.  Id.  Fourth, the ALJ failed to recognize or acknowledge that mental impairments may vary over time, and the fact that the personality disorder was not diagnosed by other physicians does not warrant rejecting the subsequent report.  Id. at 8.  Finally, Plaintiff argues his ability to work prior to his accident in 2000 is irrelevant to whether he is now able to work.  Id.

In step two of his analysis, the ALJ determined Plaintiff's r/o antisocial personality disorder was severe.  (Tr. 24).  The Court is somewhat perplexed by this statement because it is not clear how any impairment which is to be ruled out can be severe. Nevertheless, the ALJ labeled r/o antisocial personality disorder as severe, but then later discredited Dr. Schoenrock's opinion that Plaintiff may suffer from antisocial

disorder because, according to the ALJ, the disorder is not supported by the record or by Plaintiff's activities of daily living.  (Tr. 26).  The ALJ's statements with respect to the weight he gives Dr. Schoenrock's opinion is therefore in direct contradiction to his findings with respect to Plaintiff's severe impairments, i.e., the ALJ cannot find Plaintiff has a severe impairment of r/o antisocial disorder and at the same time state there is no support in the record for this disorder.

Plaintiff is also correct that mental impairments can change over time and can in fact worsen over time.  The ALJ fails to recognize this truism when he justified his decision to discredit Dr. Schoenrock's opinion based on the fact the record does not reflect that social personality disorder ever impacted Plaintiff in any of his past employment and more specifically, when he noted Plaintiff previously worked as a semi-driver.  The fact that Plaintiff used to work as a semi-driver has absolutely no relevance to whether he now has antisocial disorder; indeed, Dr. Pino, one of Plaintiff's treating physicians, noted Plaintiff's mental disorders are related to Plaintiff's pain resulting from his work related injury.  (Tr. 267-68).

Lastly, in conclusively opining Dr. Schoenrock's tests and forms fail to show Plaintiff suffers from any psychiatric disorder, the ALJ is substituting his own opinion for that of a medical expert.  <u>Marbury v. Sullivan</u>, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring specially) ("[A]s a hearing officer, [the ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.").  The evidence of record clearly shows several mental health professionals have diagnosed Plaintiff with mental disorders; the ALJ's inference that the tests and forms administered

to Plaintiff by Dr. Schoenrock do not support a psychiatric disorder is an inference the ALJ is not qualified to make.  This case must be remanded for the ALJ to reconsider Dr. Schoenrock's diagnoses and to evaluate whether Plaintiff needs additional follow up with a psychologist or other mental health professional.

### 2.    Dr. Janousek

The record contains two notes from Dr. Janousek, M.D., a family practice physician, opining that Plaintiff is totally and permanently disabled.  The first note is dated December 12, 2001, and states Plaintiff is disabled due to lung disease and back pain.  (Tr. 296).  The second note is dated March 4, 2002, and again expresses Dr. Janousek's opinion that Plaintiff is disabled; however, this note states Plaintiff is disabled because of emphysema, obesity, and back pain.  (Tr. 295).  The record is devoid of any additional records from Dr. Janousek.  In his decision, the ALJ considered and rejected Dr. Janousek's opinion that Plaintiff was disabled because there were no medical records in the file from Dr. Janousek and because the opinion was conclusory and inconsistent with the medical evidence of record when considered in its entirety. (Tr. 26).

Plaintiff argues the ALJ had a duty to order the medical records and erred when he failed to develop a "complete medical history" in accordance with 42 U.S.C. §413(d)(5)(B) and 20 C.F.R. § 404.1512(d).  (Doc. 11, p. 7).  Plaintiff also argues the ALJ's conclusion that Dr. Janousek's opinion is not supported by the objective evidence is generic and unsubstantiated.  Id.

Defendant responds the ALJ properly rejected Dr. Janousek's conclusory

disability opinion because: (1) there were no treatment records from this doctor; 2) it

was not supported by objective medical findings; and 3) it was inconsistent with the

evidence of record when considered in its entirety.  (Doc. 14, p. 10).  Defendant further

responds it was Plaintiff's burden, not the ALJ's, to elicit any information regarding

Plaintiff's condition, particularly in light of the fact that Plaintiff was represented by an

attorney.  Id. at 10-11.  Defendant contends the ALJ only had a duty to develop

Plaintiff's medical history for the twelve months prior to Plaintiff's application date.  Id. at

11; see 20 C.F.R. §416.916(d).

As social security hearings are non-adversarial in nature, the ALJ has a duty to

develop a full and fair record.  Osborn v. Barnhart, 194 Fed. Appx. 654, 668 (11th Cir.

2006).  This obligation exists even when the Plaintiff is represented by an attorney.

Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  Defendant, however, is

correct that the ALJ is only required to develop Plaintiff's medical history for the twelve

months prior to Plaintiff filing his application.  Ellison v. Barnhart, 355 F.3d 1272, 1276

(11th Cir. 2003).   It is Plaintiff's burden to prove he is disabled, and as such, he bears

the responsibility of producing evidence in support of his claim.  On the other hand,

"'[w]hen the evidence . . .from [Plaintiff's] treating physician or psychologist or other

medical source is inadequate...to determine whether [Plaintiff is] disabled,' the

Commissioner is empowered to recontact the treating physician to obtain additional

information."  Osborn, 194 Fed. Appx. at 668 (quoting 20 C.F.R. §404.1512(e)).

Here, it is Plaintiff's burden to show he is disabled; Plaintiff had the duty to

produce all of the evidence, aside from the 12 months preceding his filing of his

application, in support of his claim.  Upon being asked by the ALJ whether there were

any additional documents that needed to be included in the record, Plaintiff's counsel

responded no.  (Tr. 434).  It was counsel's burden to produce Dr. Janousek's records, if

any exist.  Nevertheless, it is true the ALJ was on notice that Plaintiff was either

evaluated or treated by Dr. Janousek and thus, the ALJ could have, and probably

should have, either contacted Dr. Janousek himself to determine if there were any

additional records evaluating Plaintiff or asked Plaintiff to furnish the ALJ with any

missing records from Dr. Janousek's office.

Social Security Ruling 96-5P is instructive on this issue.  It provides: "[b]ecause

treating source evidence (including opinion evidence) is important, if the evidence does

not support a treating source's opinion on any issue reserved to the Commissioner and

the adjudicator cannot ascertain the basis of the opinion from the case record, the

adjudicator must make 'every reasonable effort' to recontact the source for clarification

of the reasons for the opinion."  SSR 96-5P, *6.

Because this Court is already remanding this case, the ALJ should determine

whether Dr. Janousek has additional medical records on which he based his opinion of

Plaintiff's disability status, and if so, should consider such records when evaluating

whether Plaintiff is disabled.

### 3.    Dr. Hunter

In his decision, the ALJ stated he gave the opinion of Dr. Hunter, one of Plaintiff's

treating physicians, controlling weight.  (Tr. 26).  Specifically, the ALJ agreed with Dr.

Hunter that Plaintiff was restricted to performing sedentary work and was to avoid

prolonged standing or walking and was to change positions as needed. (Tr. 26). In assessing Plaintiff's RFC, however, the ALJ failed to specify the frequency with which Plaintiff would need to change positions.

Plaintiff claims the ALJ erred by not addressing Dr. Hunter's opinion that Plaintiff should not engage in prolonged sitting and must be able to change positions. (Doc. 11, p. 8). Defendant responds the ALJ was not required to include the temporary sit/stand option noted by Dr. Hunter in 2000 and the prolonged sitting limitation noted on Dr. Hunter's 2001 form into his RFC assessment because the ALJ specifically noted he relied on both Dr. Hunter and Dr. Caban's opinions in determining Plaintiff's RFC. (Doc. 14, p. 9). Moreover, Defendant argues the ALJ did not err because the state agency doctors did not conclude Plaintiff had restrictions on sitting or required a sit-stand option and the ALJ found Plaintiff had the same restrictions as set forth by the state agency physicians. Id.

Interestingly, the ALJ specifically noted Dr. Hunter opined Plaintiff was to avoid prolonged standing or walking and was to change positions as needed. (Tr. 26). The ALJ also specified he was giving Dr. Hunter's opinion controlling weight. Id. Social Security Ruling 96-9 P provides "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9P. *7. Because the ALJ gave controlling weight to Dr. Hunter's opinion without discounting the part that states Plaintiff shall alternate between sitting and standing, on remand, the ALJ shall include, in his RFC and if applicable, in his questions to a V.E., the frequency with which Plaintiff will need to change positions or alternate between sitting or standing, so

-23-

that it can be determined whether Plaintiff has the capacity to perform any sedentary jobs existing in the national economy.

### 4.    Dr. Pino

The ALJ gave controlling weight to Dr. Pino's opinion that Plaintiff has no psychiatric restrictions preventing him from working.   (Tr. 26). Plaintiff states the ALJ erred by not addressing Dr. Pino's GAF assessments of 31 and 41, which Plaintiff believes equate to disability.  (Doc. 11, p. 9).  Defendant argues that courts have held GAF scores do not demonstrate the accuracy of Plaintiff's RFC assessment.  (Doc. 14, p. 13).

Defendant is correct that a GAF score is not an assessment of Plaintiff's ability to work; rather, it is a global reference scale to aid in treatment of an ongoing condition. Newsome ex rel. Bell v. Barnhart, 444 F. Supp. 2d 1195, 1198 (M.D. Ala. 2006). Neither case law nor the Social Security Regulations require an ALJ to determine the extent of an individual's disability based on his GAF score.  Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003).  The ALJ did not err by not finding Plaintiff's GAF score indicative of a disability.

### B.    Whether the ALJ erred by rejecting Plaintiff's credibility.

Plaintiff next argues the ALJ erred when he rejected Plaintiff's credibility because he failed to examine all of the evidence or apply the proper credibility factors.  (Doc. 11, pp. 9-13).  In particular, Plaintiff claims the ALJ made conclusory statements regarding Plaintiff's credibility and the medical evidence of record.  Id. at 10.  Moreover, Plaintiff argues the ALJ erred in basing Plaintiff's credibility determination on Plaintiff's daily

activities and his failure to seek out medical treatment for lack of funds.  Id. at 11.

Defendant counters that the ALJ properly determined Plaintiff's subjective complaints of

pain were not fully credible.  (Doc. 14, p. 16).  Defendant argues the ALJ explicitly set

forth his reasons for rejecting Plaintiff's credibility and such findings were based on

substantial evidence.  Id.

　　　The ALJ must consider all of a claimant's statements about his symptoms,

including pain, and determine the extent to which the symptoms can reasonably be

accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528,

416.929.  In determining whether the medical signs and laboratory findings show

medical impairments which reasonably could be expected to produce the pain alleged,

the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying
> medical condition and either (2) objective medical evidence
> that confirms the severity of the alleged pain arising from that
> condition or (3) that the objectively determined medical
> condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)  (quoting Holt v. Sullivan, 921 F.2d

1221, 1223 (11th Cir. 1991)).

　　　A plaintiff's subjective testimony supported by medical evidence that satisfies the

pain standard is sufficient for a finding of disability.  Foote, 67 F.3d at 1561.  Pain alone

can be disabling, even when its existence is unsupported by objective evidence, Marbury

v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to

pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  Plaintiff may

establish his pain is disabling through objective medical evidence that an underlying

medical condition exists that could reasonably be expected to produce the pain.  Foote, 67 F.3d at 1561.

"Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain in deciding the issue of disability."  French v. Massanari, 152 F. Supp. 2d 1329, 1336 (M.D. Fla. 2001) (citing Foote, 67 F.3d at 1561).  See also SSR 96-7P (stating that after the ALJ finds a medically-determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").  When Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  SSR 96-7P.

At the hearing, Plaintiff testified he is unable to work because of his pain.  (Tr. 408).  He stated he can lift about 5 to 10 pounds and can walk about 800 yards without discomfort and that his pain is a 6 or 7 on a ten point scale.  (Tr. 418-19).  The ALJ determined the objective medical evidence establishes Plaintiff has pain and limitations from his impairments, but he rejected Plaintiff's claims that Plaintiff's pain prevented him from working.  (Tr. 25).  The ALJ determined Plaintiff lacked credibility with regard to his statements of pain for five reasons: (1) his daily activities are not totally limited and are

consistent with the ALJ's RFC findings; (2) Plaintiff's treatment was routine and/or

conservative in nature; (3) despite Plaintiff's claims that he could only receive medical

treatment at the Health Department due to his financial difficulties, the record shows

Plaintiff only went to the Health Department on one occasion; (4) the record shows

opinions from Plaintiff's examining and treating physicians stating Plaintiff is able to work;

and (5) Plaintiff's appearance and demeanor at the hearing was generally unpersuasive

because Plaintiff did not appear to be in pain.[4] Id.

The ALJ's determination that Plaintiff lacked credibility is supported by substantial

evidence.  The ALJ considered the record as a whole, including the credibility factors set

forth in SSR 96-7 such as the intensity, persistence, and functionally limiting effects of

Plaintiff's pain.  The fact that several of Plaintiff's treating and examining physicians

found Plaintiff capable of working provides a substantial basis for rejecting Plaintiff's

allegations of totally disabling pain.  See Aurednick v. Sullivan, 733 F. Supp. 1460, 1463

(11th Cir. 1990).

### C.    Whether the ALJ erred in failing to consider the impact of Plaintiff's obesity on his ability to work.

Plaintiff next argues the ALJ improperly failed to comply with SSR 02-01P by

failing to articulate how Plaintiff's obesity affects his ability to perform sustained work

functions.  (Doc. 11, p. 14).  On the other hand, Defendant argues the ALJ made various

references which demonstrate the ALJ considered Plaintiff's weight in combination with

---

[4]    The ALJ noted this last factor only played a small part in the ALJ's decision
to discredit Plaintiff's statements regarding Plaintiff's pain.

Plaintiff's other impairments.  (Doc. 14, p. 17).  Defendant further argues Plaintiff failed to meet his burden of proving his obesity caused additional limitations such as fatigue.  <u>Id.</u>.

Social Security Ruling 02-01P clarifies the Social Security Administration's policy concerning the evaluation of obesity in disability claims.  Specifically, it states when the ALJ has identified obesity as a medically determinable impairment, the ALJ will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments he identifies.  SSR 02-01P at *7.  Here, the ALJ found Plaintiff's obesity is a severe impairment within the meaning of the regulations.  (Tr. 24).  The ALJ, however, never discussed Plaintiff's obesity again in his Decision.  While the ALJ did include postural limitations when determining Plaintiff's RFC, the ALJ never stated whether such limitations were caused by or affected by Plaintiff's obesity.  As such, the Court is unable to determine whether the ALJ considered whether Plaintiff had any functional limitations resulting from Plaintiff's obesity when determining Plaintiff's RFC.  Therefore, on remand, the ALJ should consider and explain whether Plaintiff's obesity affects Plaintiff's RFC and what impact such findings have on Plaintiff's disability status.

> **D.**     **<u>Whether the ALJ erred by not examining whether Plaintiff's impairments either meet or are medically equivalent to Listing Sections 12.04 and 12.05C.</u>**

Plaintiff claims the ALJ erred by failing to analyze whether Plaintiff meets or equals 12.04 and 12.05C of the Listings.  (Doc. 11, p. 16).  Plaintiff argues he meets section 12.05C of the Listings and equals Sections 12.05C and 12.04 of the Listings.  <u>Id.</u>

Defendant argues it was Plaintiff's burden to prove his impairments either met or equaled a Listing.  (Doc. 14, p. 3).  Defendant further argues Plaintiff failed to show he met Listing 12.05C because Plaintiff was diagnosed with borderline intellectual functioning, not mental retardation.  Id. at 6.  Defendant also points out that Plaintiff's most recent IQ score was 74 – a score not indicative of mental retardation – and even if Plaintiff's IQ was 70 when he was 16, the other evidence of record shows Plaintiff does not meet the mental retardation definition.  Id.   Finally, Defendant contends Plaintiff failed to demonstrate Plaintiff meets the B criteria of Listing 12.04 because the medical evidence of record shows Plaintiff has only mild restrictions of daily activities, moderate to marked difficulties in maintaining social functioning, mild to moderate difficulty in maintaining concentration, persistence or pace; and he has not experienced any repeated episodes of decompensation. Id. at 5.

The Court notes the ALJ failed to specifically discuss whether Plaintiff's impairments met or equaled the equivalent to either Listing 12.04 or 12.05C.  While this is not error when the record demonstrates an implied finding that the claimant does not meet the listing, see Hutchinson v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986), here, in Plaintiff's initial hearing, the ALJ questioned whether Plaintiff's initial IQ score was a valid score and further questioned whether Plaintiff could meet the 12.05C Listing.  (Tr.  429).  Additionally, Plaintiff was diagnosed with affective disorder (Tr. 209) and the ALJ found Plaintiff's affective disorder was severe (Tr. 24).  Notably, the ALJ never specifically discussed either the 12.05C (mental retardation) or 12.04 (affective disorder) Listings in his Decision.  In light of Plaintiff's low IQ scores and diagnoses of affective disorder, on

remand, the ALJ should consider and specifically discuss whether Plaintiff's impairments meet or equal the equivalent of either Listing 12.04 and/or 12.05C.

**E.**     **Whether the ALJ Should Obtain Medical Expert Testimony Regarding Equivalency Under Listings 12.04 and 12.05C.**

Plaintiff next urges this Court to remand the case to the ALJ with instruction to obtain medical expert testimony regarding medical equivalency under Listing 12.05C and 12.04.  (Doc. 11, p. 16).  Plaintiff argues a medical judgment is required to determine whether Plaintiff's impairments are the medical equivalent of the Listings.  Id.  Plaintiff further argues that because additional evidence was submitted after the DDS review, the only way for the ALJ to obtain a medical judgment is to have a Medical Expert at the hearing.  Id.

In response, Defendant argues that the objective medical evidence is sufficient to support the ALJ's decision, and the ALJ is not obligated to seek independent expert testimony.  (Doc. 14, p. 7).  Defendant further argues the ALJ examined the additional medical evidence submitted by Plaintiff and the ALJ found such evidence did not change the finding by the state agency medical consultant that Plaintiff's impairments were not equivalent in severity to a listed impairment.  Id.

The Court has already determined that the ALJ should specifically address whether Plaintiff's impairments either meet or are the equivalent of Listing 12.04 and 12.05C.  Because this case is being remanded due to the fact the ALJ's opinion was not based on substantial evidence and in particular, because the ALJ's decision to discredit Dr. Schoenrock's opinion was not based on substantial evidence, the Court believes an opinion from a medical expert as to whether Plaintiff's impairments are equivalent to

Listings 12.04 or 12.05C is necessary.  <u>See</u>, <u>e.g.</u>, SSR 96-6P (stating that when

additional medical evidence is received which may change the State agency medical or

psychological consultant's finding that the impairment is not equivalent in severity to any

impairment in the Listings, an updated medical judgment is required by a medical

expert).  Therefore, on remand, the ALJ shall consult a medical expert to determine if

Plaintiff's impairments are equivalent to 12.04 and/or 12.05C.

> **F.**     **<u>Whether the ALJ erred by failing to assess the effects of stress upon Plaintiff when determining Plaintiff's RFC.</u>**

Plaintiff next argues the ALJ failed to address Plaintiff's low stress tolerance when

determining Plaintiff's RFC.  (Doc. 11, p. 18).  Plaintiff states stress is not characteristic

of a job – rather, it is an individual's subjective response to a situation.  <u>Id.</u>  Thus,

although Plaintiff admits the ALJ included a limitation to "avoid unusual stress" in

Plaintiff's RFC, Plaintiff argues the ALJ should have specified Plaintiff's impairment

related limitations which are created by Plaintiff's particular response to work demands in

the RFC.  <u>Id.</u>  Defendant argues the ALJ properly determined Plaintiff's mental RFC in

that he limited Plaintiff to unskilled work, avoiding contact with the public, having limited

contact with supervisors and co-workers, avoiding unusual stress, and needing simple

tasks.  (Doc. 14, pp. 12 and 15).

The Court finds Plaintiff's argument that the ALJ failed to assess the effects of

stress upon Plaintiff when determining Plaintiff's RFC unavailing.  Defendant is correct

that the Court considered the types of factors which would cause stress to Plaintiff, such

as interacting substantially with co-workers and supervisors and performing moderate to

difficult tasks.

**G.**    **Whether the ALJ erred by finding Plaintiff not disabled because he failed to account for the erosion of the occupational base for the number of jobs Plaintiff can perform.**

Plaintiff notes the ALJ utilized a VE in the fifth step of the evaluation process; however, Plaintiff argues the ALJ erred by not determining whether there is an erosion of the occupational base for the number of sedentary jobs and the number of jobs available which Plaintiff could perform.  (Doc. 11, p. 19).   Plaintiff also raises a question regarding whether the one sedentary job which the VE found Plaintiff capable of performing – an addresser -- can constitute a significant number of jobs in the national economy.  Id. at 19-20.  Additionally, in a footnote, Plaintiff raises the argument that Plaintiff likely could not work as an addresser because of his limited ability to read and write.  Id. at 19, n.9.

Defendant argues Plaintiff is mistaken in its argument because the ALJ is not required to compare the percentage of available jobs to the number of jobs Plaintiff can perform.  (Doc. 14, p. 17-18).  Moreover, Defendant argues that although the VE only identified one type of job for which Plaintiff is capable of working, i.e., addresser, a significant number of addresser jobs are available in the national economy and regionally.  Id. at 18.

While the Court finds that, based on the number of available addresser jobs the VE testified exist, there are a sufficient number of these jobs to satisfy the standard, the Court questions whether Plaintiff is capable of performing this particular job.  Notably, the job of addresser is the only sedentary job identified by the VE for which he believed Plaintiff was capable of performing based on the ALJ's hypothetical.  The ALJ's hypothetical, however, failed to include the limitation that Plaintiff's reading and writing

skills are limited.  (Tr. 339).  In his initial hearing, Plaintiff testified he could not read or

write (Tr. 406), and the ALJ confirmed this testimony in his Decision.  (Tr. 24).

Importantly, the ALJ never expressed any doubt as to Plaintiff's credibility

regarding his ability to read and write, so it is unclear why he did not include this

limitation in the hypothetical he asked the VE or as a limitation in Plaintiff's RFC.

Indeed, when Plaintiff's attorney questioned the VE about whether an addresser position

would require a person to have the ability to read and write, the VE noted most of the

positions would require some reading.  (Tr. 447-48).  As such, the Court finds the VE did

not meet his burden in step five of the analysis because he failed to consider Plaintiff's

limitation with regard to reading and writing when he determined a significant number of

jobs which Plaintiff could perform existed in the national economy.  Thus, on remand, the

ALJ is required include Plaintiff's limited ability to read and write in Plaintiff's RFC,  and

at step five of the ALJ's analysis, the ALJ shall utilize the services of a VE and include all

of Plaintiff's limitations, including his limited ability to read and write, in his hypothetical to

the VE.

**H.     Whether the ALJ ignored the mandatory requirements of SSR 96-8P**
**when determining Plaintiff's RFC.**

Plaintiff cites SSR 96-8P for the proposition that in determining Plaintiff's RFC,

the ALJ was required to assess "what an individual can still do despite his or her

limitations . . . on a regular and continuing basis."  (Doc. 11, p. 20).  Essentially, Plaintiff

argues the ALJ failed to assess whether Plaintiff is capable of working on a regular and

continuing basis in light of the fact he weighs 400 pounds, suffers from near borderline

intellectual functioning and constant back pain with fatigue.  Id.  Plaintiff also argues the

ALJ failed to consider all the medical and vocational evidence in determining Plaintiff's RFC.

Because this case is being remanded with instructions for the ALJ to reconsider Plaintiff's RFC, the Court simply reiterates that on remand, the ALJ should reconsider the evidence as a whole, including whether Plaintiff is capable of performing a job on a regular and continuing basis in light of Plaintiff's medical and psychological impairments, and should reassess Plaintiff's RFC.

    **I.**    **Whether the Court should remand this case pursuant to sentence six of 42 U.S.C. §405.**

Plaintiff asks this Court to remand this case pursuant to sentence six of 42 U.S.C. §405(g), for consideration of new evidence of Plaintiff's chronic obstructive pulmonary disease ("COPD") and congestive heart failure in 2005, as well as Dr. Maliszewski's opinion that Plaintiff is "unable to work due to his medical conditions of Emphysema, Morbid Obesity, and Shortness of Breath." (Doc. 11, p. 22). Plaintiff argues this new evidence warrants a remand because it could change the outcome of the case.

Defendant opposes a sentence six remand because the August 5, 2005, opinion that Plaintiff is now disabled is not new or material since the ALJ already considered medical opinions that Plaintiff was disabled, as well as other medical opinions showing Plaintiff could work. (Doc. 14, p. 19). Additionally, Defendant argues the evidence indicating Plaintiff has COPD, emphysema, and congestive heart failure, while new, is not material to the ALJ's decision because it does not relate to the period in question; rather, it shows Plaintiff's condition deteriorated after the ALJ's decision and after the date he was last insured, December 31, 2004. Id. Finally, Defendant contends Plaintiff

-34-

failed to show good cause for failing to present this evidence at the administrative level.
Id.

The Eleventh Circuit has determined that before a remand is warranted based on newly submitted evidence, the claimant must establish that (1) the evidence is new and noncumulative, (2) the evidence is material (i.e., relevant and probative so that there is a reasonable possibility that it would change the administrative result), and (3) there is good cause for the failure to submit the evidence at the administrative level.  Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998) (citing Cannon v. Bowen, 858 F.2d 1541 (11th Cir. 1988)).  The evidence submitted by Plaintiff to the Appeals Council consists of medical records from North Florida Medical Centers, Inc. dated May 2005-August 2005 and records from Shands at Live Oak and Shands Health Care, dated August 2004-July 2005.  (Tr. 327-380).  This evidence shows Plaintiff suffers from COPD, congestive heart failure, and atrial fibrillation.

The majority of the medical records submitted to the Appeals Council are both new and noncumulative.  The record from Shands at Live Oak dated August 2, 2004 (Tr. 327) is within the relevant time period that Plaintiff was insured and shows new evidence relating to Plaintiff's shortness of breath and COPD.  The record states Plaintiff's history of COPD and shortness of breath goes back four years.  (Tr. 327).  Because the ALJ did not consider Plaintiff's COPD as severe in step two of his analysis, this particular record is material in that it could change the result at the administrative level.   Plaintiff, however, does not show good cause as to why he failed to offer this evidence into the record.  Plaintiff attended a second hearing with the ALJ on August 31, 2004 – only 26

days after he was seen at Shands – but Plaintiff did not offer this into evidence during

the hearing; nor did he submit it before the ALJ issued his decision on October 15, 2004

(Tr. 17-29).  Thus, a sentence six remand is not warranted based on this particular

record.  Nevertheless, the ALJ is instructed to consider this evidence upon remand

because the Federal Regulations state that any issues relating to Plaintiff's claim should

be considered on remand regardless of whether they were raised in the prior

administrative proceedings.  See 20 C.F.R. §§ 404.983, 404.984 (2005).  Moreover, this

evidence should be considered on remand because it is relevant to Plaintiff's prior

complaints at the administrative level; specifically, Plaintiff complained he had trouble

breathing and he had lung disease.  (Tr. 43).

The record also contains medical records from the North Florida Medical Centers,

Inc. from May 10, 2005 through July 22, 2005 (Tr. 364-379) and an opinion from Bogdan

Maliszewski, M.D. of North Florida Medical Centers, Inc. stating Plaintiff is unable to

work due to his medical conditions of emphysema, morbid obesity, and shortness of

breath (Tr. 380).  This evidence is new because no similar evidence has been introduced

into the record.  Cannon v. Bowen, 858 F.2d 1541, 1546.  Although Plaintiff argues the

ALJ has considered another opinion from a physician stating Plaintiff is unable to work,

Dr. Maliszewski's opinion is non-cumulative because it provides a new basis for an

opinion that Plaintiff is not capable of working, and additionally there are medical records

supporting the opinion.  It is, however, unclear if these records are material because they

are after Plaintiff's date last insured, but because they specifically deal with Plaintiff's

COPD, emphysema, obesity and shortness of breath – impairments which existed during

Plaintiff's insured period, the ALJ should consider them to determine whether they have any impact on the ALJ's analysis.

The remaining medical records offered by Plaintiff, i.e., the medical records from Shands excluding the August 8, 2004 record (Tr. 330-365), are also new and noncumulative, but are not material.  While these records show Plaintiff was diagnosed with new onset atrial fibrillation (Tr. 334) on March 24, 2005 and congestive heart failure and atherosclerotic cardiovascular disease (Tr. 342) on April 29, 2005, these records are dated after Plaintiff's date last insured and therefore, they are unlikely to change the result at the administrative level.

Because the evidence Plaintiff submitted to the Appeals Council does not meet the standards set forth by the Eleventh Circuit for a sentence six remand, the Court will deny Plaintiff's request for a sentence six remand.  However, because this Court already found that this case should be remanded for the reasons stated above, the ALJ is instructed, on remand, to consider the record dated August 2, 2004 from Shands Heath Care (Tr. 327-29), as well as all of the records from North Florida Medical Centers, Inc. (Tr. 364-379) because such evidence is relevant to the impairments Plaintiff raised at the administrative level, including Plaintiff's COPD, shortness of breath, and emphysema.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall: (1) reconsider Dr. Schoenrock's opinion and shall evaluate whether Plaintiff needs additional follow up with a psychologist or other mental health professional before

making a disability decision; (2) determine whether Dr. Janousek has additional medical records on which he based his opinion of Plaintiff's disability status, and if so, the ALJ shall consider such records when evaluating whether Plaintiff is disabled; (3) include, in Plaintiff's RFC and if applicable, in the ALJ's questions to a V.E., the frequency with which Plaintiff will need to change positions or alternate between sitting or standing, so that it can be determined whether Plaintiff has the capacity to perform any sedentary jobs existing in the national economy; (4)  consider and explain whether Plaintiff's obesity affects Plaintiff's RFC and what impact such findings have on Plaintiff's disability status; (5) evaluate and specifically discuss whether Plaintiff's impairments meet Listing 12.05C; (6)  consult a medical expert to determine if Plaintiff's impairments are equivalent to 12.04 and/or 12.05C; (7) include Plaintiff's limited ability to read and write in Plaintiff's RFC and if needed, shall include all of Plaintiff's limitations, including his limited ability to read and write, in his hypothetical to the VE; (8) shall determine, and include in Plaintiff's RFC, whether Plaintiff is capable of performing a job on a regular and continuing basis in light of Plaintiff's medical and psychological impairments; (9) and shall consider the record dated August 2, 2004 from Shands Heath Care (Tr. 327-29), as well as all of the records from North Florida Medical Centers, Inc. (Tr. 364-379) in evaluating Plaintiff's disability.

The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __28th__ day of March, 2007.

*Monte C. Richardson*
_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record